FILED

2020 Oct-29  AM 10:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **STEPHANE BRYANT,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  6:20-cv-00206-ACA** |
| | } | |
| **SOCIAL SECURITY** | } | |
| **ADMINISTRATION,** | } | |
| **COMMISSIONER,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Stephanie Bryant appeals the decision of the Commissioner of Social Security denying her claims for a period of disability, disability insurance benefits, and supplemental security income.  Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Ms. Bryant applied for a period of disability, disability insurance benefits, and supplemental security income alleging that her disability began on September 14,

2015.  (R. at 158–167, 255).[1]  The Commissioner initially denied Ms. Bryant's claim (*id.* at 100–06), and Ms. Bryant requested a hearing before an Administrative Law Judge ("ALJ") (*id.* at 107–08).  After holding a hearing (r. at 36–63), the ALJ issued an unfavorable decision (*id.* at 16–35).  The Appeals Council denied Ms. Bryant's request for review (*id.* at 1), making the Commissioner's decision final and ripe for the court's judicial review.  *See* 42 U.S.C §§ 405(g), 1383(c).

## II.   STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted).  "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted).  The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]."  *Winschel*, 631 F.3d at 1178 (quotation marks omitted).  The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings."

---

[1] Ms. Bryant originally alleged that her disability began on January 1, 2013, but she later amended the alleged onset date.  (R. 21, 158, 160, 255).

*Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III.   ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Bryant had not engaged in substantial gainful activity since September 14, 2015, the amended alleged onset date. (R. at 21). The ALJ found that Ms. Bryant's degenerative disc disease, osteoarthritis,

status post left knee arthroscopy, seizure disorder, obesity, Raynaud's syndrome, major depressive disorder, anxiety, post-traumatic stress disorder, and borderline personality disorder are severe impairments. (*Id.*). The ALJ concluded that Ms. Bryant's fibromyalgia, myalgic encephalomyelitis, chronic fatigue, chronic mononucleosis, hypothyroidism, and history of gastric bypass surgery with hernias, acid reflux, and dumping are not severe impairments. (*Id.* at 22). The ALJ then found that Ms. Bryant does not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*).

After considering the evidence of record, the ALJ determined that Ms. Bryant has the residual functional capacity to perform light work with certain postural, environmental, and social limitations. (R. at 23). Based on this residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs exist in significant numbers in the national economy that Ms. Bryant can perform, including charge-account clerk, spotter, and bench hand. (*Id.* at 29). Accordingly, the ALJ determined that Mr. Bryant has not been under a disability, as defined in the Social Security Act, from September 14, 2015, through the date of the decision. (*Id.*).

## IV. DISCUSSION

Ms. Bryant argues that the court should reverse and remand the Commissioner's decision because the ALJ did not properly evaluate her subjective

complaints of pain regarding her cervical degenerative disc disease[2] and her mental impairments.  (Doc. 9 at 5–11, 14–17).  The court disagrees.

Under Eleventh Circuit precedent, a claimant attempting to establish disability through testimony of pain or other subjective symptoms must show evidence of an underlying medical condition and either (1) "objective medical evidence that confirms the severity of the alleged pain arising from that condition" or (2) "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks omitted); *see also* SSR 16-3p.  "If a claimant testifies as to h[er] subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms."  *Id.* at 1210.

With respect to her degenerative disc disease, Ms. Bryant testified that she underwent an unsuccessful cervical fusion in 2009.  (R. 43).  According to Ms. Bryant, despite taking pain medications and muscle relaxers, her degenerative disc disease causes neck pain at a 7 on a 10-point scale.  (*Id.* at 43–44).  Ms. Bryant testified that she has difficulty driving because she cannot turn her head, and she

---

[2] Ms. Bryant does not challenge the ALJ's evaluation of her subjective complaints related to any other physical impairment.  (*See generally* Doc. 13 at 3–6).

cannot sit in certain positions for extended periods of time.  (*Id.* at 44).  Ms. Bryant also complained that her cervical pain causes nausea and headaches two to three times a week.   (R. 44–45).  Ms. Bryant claimed that she can sit continuously for only 30 minutes and must change positions or lie down every five to ten minutes after standing up.  (*Id.* at 54–55).  Ms. Bryant testified that she must lie down about two to three hours in an 8-hour workday on a good day and four to five hours on a bad day.  (*Id.* at 55).

As for her mental impairments, Ms. Bryant testified that her seasonal depression causes her to feel unmotivated and anti-social.  (R. at 48).  Ms. Bryant explained that her post-traumatic stress disorder causes flashbacks and makes her nervous.  (*Id.* at 49).  Ms. Bryant also complained of experiencing anxiety while driving and in "any social situation."  (*Id.* at 50).  She testified that the death of her son in September 2018 aggravated her mental symptoms.  (R. at 56).

After reviewing Ms. Bryant's testimony, the ALJ found that Ms. Bryant's medically determinable impairments could reasonably be expected to cause her alleged symptoms.  (R. 25).  But the ALJ concluded that Ms. Bryant's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*).

With respect to Ms. Bryant's cervical pain, the ALJ explained that in the months after her fusion in 2009, Ms. Bryant's surgeon noted some recurrent pain and numbness. (R. 26) (citing R. 320). But the surgeon also explained that Ms. Bryant had no significant tenderness and good strength. (R. 320). He recommended placement of a bone-growth stimulator to correct possible non-union and instructed Ms. Bryant to follow-up in six weeks. (R. 320). However, Ms. Bryant sought no further treatment with her surgeon.

The ALJ also reviewed medical records from 2015 to 2018 indicating some neck and shoulder pain and spasms. (R. 26) (citing R. 360, 365, 369 373, 377). Ms. Bryant's doctors treated her with muscle relaxers and pain medications which Ms. Bryant took as prescribed and which decreased her pain and increased her function. (R. 360, 362, 365, 369, 373). The ALJ noted that Ms. Bryant received injections to treat her cervical pain in 2017 and 2018. (R. 26) (citing R. 514–15, 519).

In addition, the ALJ considered medical records showing sporadic complaints of migraines and nausea and 2018 x-rays of Ms. Bryant's cervical spine that showed some degenerative changes but no acute abnormality. (R. 26) (citing R. 463, 492, 497, 507, 517, 558, 604, 555).

After considering this evidence, the ALJ rejected Ms. Bryant's subjective testimony about the limiting effects of her cervical pain because the ALJ concluded

that Ms. Bryant's 2009 conservative treatment since her surgery appeared "to have been reasonably successful in controlling her symptoms." (R. 26).

Ms. Bryant argues that the ALJ's analysis of her complaints of cervical pain is flawed for two reasons. First, Ms. Bryant contends that the ALJ failed to explicitly consider November 2014 x-rays showing severe degenerative disc changes at C5-6 and suggesting muscle spasm. (Doc. 13 at 5) (citing R. 385). Second, Ms. Bryant faults the ALJ for not acknowledging medical records from the same day as her September 2018 x-ray indicating that she suffers from severe degenerative disc disease and neck pain. (Doc. 13 at 5) (citing R. 412, 414).

To the extent Ms. Bryant claims that the ALJ did not specifically reference certain medical evidence in the record that she claims supports her allegations of pain (*see* doc. 13 at 5), "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision[] . . . is not a broad rejection which is not enough to enable [this court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (some alterations added). The ALJ's recitation of the medical evidence of record was thorough and accurate, and it sufficiently demonstrates that she considered Ms. Bryant's medical condition as a whole. (*See* R. at 26–27).

The September 2018 records showing a degenerative disc disease diagnosis and subjective complaints of neck pain do not undermine the ALJ's evaluation of

Ms. Bryant's pain testimony.  First, although the records state that Ms. Bryant suffers from cervicalgia and degenerative disc disease, diagnoses alone do not establish disability.  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he "'severity'" of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").

Second, Ms. Bryant's documented complaints of neck pain in September 2018 mirror those she alleged during the administrative hearing.  (R. 41, 412).  And as noted above, the ALJ examined those complaints but found that Ms. Bryant's testimony about her cervical pain was inconsistent with the medical evidence of record and her conservative treatment history.  This court may not reweigh the evidence or substitute its judgment for the ALJ, even if the evidence preponderates against the ALJ's finding.  *Winschel*, 631 F.3d at 1178; *Crawford,* 363 F.3d at 1158–59; *see also Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

 Ms. Bryant contends that that the ALJ failed to properly evaluate her subjective complaints about her mental impairments because the ALJ stated that Ms.

Bryant's son died in May 2018, instead of September 2018, and because the ALJ used her son's death to discredit her testimony.[3]  (Doc. 13 at 6–7).

In summarizing Ms. Bryant's hearing testimony, the ALJ stated that Ms. Bryant's son died in May 2018 (r. 25), but Ms. Bryant's son was killed in an accident on September 23, 2018 (r. 56).  Ms. Bryant appears to assert that this error led the ALJ to conclude that Ms. Bryant had normal mental health examinations after her son's death.  (Doc. 13 at 6–7).

As part of her determination that Ms. Bryant's testimony about her mental impairments was inconsistent with the medical evidence, the ALJ reviewed treatment records from Ms. Bryant's treating psychiatrist dated September 7, 2018. (R. at 27 (citing R. 523)).  During this visit, Ms. Bryant reported being "[a] little anxious due to minor health and family issues," but Ms. Bryant reported no new depressive symptoms.  (R. 523).  In addition, Ms. Bryant's affect was appropriate and congruent; her mood, judgment, and insight were fair; and her thought was logical.  (R. 523–24).

Ms. Bryant assumes that because the ALJ did not explicitly acknowledge that her September 7, 2018 visit her psychologist occurred two weeks before her son's death, the ALJ necessarily found that Ms. Bryant received unremarkable mental

_____

[3] Ms. Bryant does not challenge any other aspect of the ALJ's evaluation of her mental health pain testimony.

health treatment after her son's accident.  But this inference is not supported by the face of the ALJ's decision which does not state that Ms. Bryant had normal or benign mental health findings after her son's death.  In fact, the record contains little to no medical evidence that post-dates Ms. Bryant's son's tragic death.  And again, even if some evidence existed in the record that contradicted the ALJ's decision, the court cannot re-weigh the evidence or substitute its judgment for that of the ALJ.

Ms. Bryant also contends that the ALJ used her son to discredit her testimony offered in support of the alleged limiting effects of her mental condition.  (Doc. 13 at 7).  Specifically, Ms. Bryant claims that "[i]t is inconceivable that the ALJ would attempt to discredit [her] testimony based on activities that she used to be able to do, and had to do, as the mother of her now-deceased son." (*Id.*).  Ms. Bryant's argument operates from a false premise.  The ALJ did not examine Ms. Bryant's interactions with her son—or any of her daily activities for that matter—in evaluating her subjective complaints of pain.  (*See* R. 24–28).  Rather, the ALJ considered Ms. Bryant's relationship and activities with her son while he was alive in determining that none of Ms. Bryant's mental impairments meet or equal a listed impairment. And Ms. Bryant has not challenged the ALJ's finding that her mental impairments no not meet or equal a listed impairment.

Accordingly, with respect to both Ms. Bryant's cervical pain and her mental impairments, substantial evidence supports the ALJ's evaluation of Ms. Bryant's subjective testimony and her application of the pain standard.

## III.   CONCLUSION

Substantial evidence supports the ALJ's denial of Ms. Bryant's application for a period of disability and disability insurance benefits, and this court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this October 29, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

12